R<small>ICHARD</small> H<small>ILTON</small>, Appellant, *v.* M<small>ARIA</small> B<small>ENDER</small> et al., Respondents.

An assessment lease executed by the corporate authorities of the city of Albany, upon a sale made under the city charter of 1828 (§§ 4, 5, chap. 164, Laws of 1828), is not *prima facie* evidence of the regularity of the pro-

Statement of case.

ceedings, or the sale; the act requires official action and record evidence of the principal steps, preliminary to a sale ; and to sustain it, the proceedings must be proved.

The clause of said charter declaring that the purchaser shall " hold the land against the owner and all persons claiming it," does not obviate the necessity of such proof.

Mere lapse of time will not raise a conclusive presumption that the proceedings were regular.

The rule applicable to sales by executors, guardians and other officers, that the lapse of thirty years time raises a conclusive presumption that all legal formalities of the sale were observed, does not apply to sales made in derogation of the common law, the proceedings for which are required to be evidenced by records and public documents which are supposed to remain in the custody of the officers charged with their preservation ; these must be proved, or their loss accounted for, and supplied by secondary evidence.

If they cannot be found, or their loss accounted for, the presumption is, in the absence of evidence, that they never existed.

It *seems*, that where a purchaser at a tax sale has taken possession undisturbed, and has continued undisturbed in the peaceful enjoyment of the property, claiming by virtue thereof, for a long period, and the owner is chargeable with knowledge of the same, and is in a condition to contest the title, a strong presumption arises as to regularity ; and as to matters not of record, the presumption may be conclusive after thirty years ; but if the purchaser does not take possession until his deed is very old, no presumption arises as to the regularity of any of the proceedings.

The provision of the act of 1844, amending the charter of said city of Albany (chap. 86, Laws of 1844), providing for the appointment of commissioners to assess damages for land taken for streets, etc., was in conflict with the constitutional provision (art. 1, § 7), providing for the appointment of commissioners in such cases ; and proceedings taken under said act are void.

J. devised his residuary real estate to Robert, Catherine his wife, and Richard, "as tenants in common and their heirs forever;" *held*, that the devise to the wife was as specific as to either of the others, and that each took an undivided one-third.

*Hilton* v. *Bender* (2 Hun, 1), reversed.

(Argued February 15, 1877 ; decided March 20, 1877.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order denying a motion for a new trial, and dismissing plaintiff's complaint.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Marcus T. Hun,* for the appellant. As there was no evidence of the authority of the mayor to execute the deed of March 1, 1836, or of the existence or regularity of the proceedings preliminary to its execution required by statute, it was void. (*Doughty* v. *Hope,* 3 Den., 599; 1 N. Y., 79; *Sharp* v. *Spier,* 4 Hill, 76–86; *Sharp* v. *Johnson,* id., 92; *Newell* v. *Wheeler,* 48 N. Y., 486.) The statute did not make this deed presumptive evidence of the regularity of the proceedings. (Laws 1828, chap. 164; *Striker* v. *Kelly,* 2 Den., 323; 4 Hill, 76.) The statute, under which the sale in 1861 was made (Laws 1844, chap. 86, § 29), was unconstitutional. (*Menges* v. *City of Albany,* 56 N. Y., 374; *House* v. *City of Rochester,* 15 Barb., 519, 520; *Clark* v. *City of Utica,* 18 id., 451; *Clark* v. *Miller,* 42 id., 265; *Hanlon* v. *Suprs. Westchester Co.,* 57 id., 394; *Newell* v. *Wheeler,* 48 N. Y., 486, 490.) The description of the property in the notice of sale was not sufficient. (*Newell* v. *Wheeler,* 48 N. Y., 486–489; *Chapman* v. *City of B'klyn,* 40 id., 372; *In re Comrs. Cent. Park,* 35 How. Pr., 277; *Ronkendorff* v. *Taylor,* 4 Pet., 262, 263; *Sharp* v. *Spier,* 4 Hill, 89.) The evidence of prior possession was alone sufficient to sustain this action. (*Hopkins* v. *Mason,* 42 How. Pr., 116; 1 Phil. Ev., 646.) Possession under an assessment lease, however long, will not give title. (*Bedell* v. *Shaw,* 59 N. Y., 46; *Bensel* v. *Gray,* 62 id., 632; *Hoyt* v. *Dillon,* 18 Barb., 644; *Howard* v. *Howard,* 17 id., 663, 665, 666; *Watson* v. *N. Y. C. R. R. Co.,* 6 Abb. Pr. [N. S.], 97.) John Hilton having entered into possession as tenant, adverse possession could not begin to run until twenty years after the termination of the tenancy. (Code, § 86; 2 Ed. Stat. at L., 306, § 86.) Being agent of the estate of James Hilton, Sr., he could not acquire title thereto as against his principal by purchasing at an assessment sale. (*Ten Eyck* v. *Craig,* 62 N. Y., 419, 420.) Adverse possession must be shown affirmatively. (Tyler on Ejectment, 874, 875; *Howard* v. *Howard,* 17 Barb., 666; *Jackson* v. *Johnson,* 5 Cow., 74, 84, 85; Code, §§ 81, 86; 2 Ed. Stat. at L., 305, § 81;

*Humbert* v. *Trinity Ch.*, 24 Wend., 597; *Jackson* v. *Waters*, 12 J. R., 368.) No adverse possession runs against a reversioner. (*Clarke* v. *Hughes*, 13 Barb., 151, 152; 3 Washb. on R. P. [3d ed.], 132–133; *Jackson* v. *Schoonmaker*, 4 J. R., 402; *Fogal* v. *Pirre*, 10 Bosw., 11.) The assessment lease will not be presumed to be regular. (*Waldron* v. *Tuttle*, 3 N. H., 344; Cooley on Taxation, 330, 332; *Townsend* v. *Estate of Downer*, 32 Vt., 191; *Bedell* v. *Shaw*, 59 N. Y., 46; Blackwell on Tax Titles [3d ed.], 522, 523; *Tolman* v. *Emerson*, 4 Pick., 162; Greenl. Ev., 15 id., § 20; Code, § 86; 2 Ed. Stat. at L., 306, § 96; *Worthing* v. *Webster*, 45 Me., 276, 277; *Burhans* v. *Van Zandt*, 7 N. Y., 527; *Van Horne* v. *Fonda*, 5 J. Ch., 406; *Hobridge* v. *Gillespie*, 2 id., 30.) The question of presumption was one of fact. (*Perepscut Prop'rs.* v. *Ransom*, 14 Mass., 147; *Blossom* v. *Cannon*, id., 177, 178; *Coleman* v. *Anderson*, 10 id., 109; Cooley on Taxation, 331.) The tenants were properly joined with the landlord in this action. (*Pearce* v. *Colden*, 8 Barb., 522; *Pearce* v. *Ferris*, 10 N. Y., 280; *Abeel* v. *Van Gelder*, 36 id., 514.)

*Amasa J. Parker*, for the respondents. The declaration of sale in the assessment deed of 1836 was evidence of title without proof of any preliminary proceedings. (Laws 1828, chap. 164, § 5.) This deed would furnish presumptive evidence of the truth of its recitals without the aid of any statutory provision. (1 Greenl. Ev., § 20, 23, note 2 ; *Garwood* v. *Dennis*, 4 Bin., 314.) It was too late after an undisturbed possession of thirty years, to question the authority of an agent to execute the deed. (1 Greenl. Ev. § 21 ; *Stockbridge* v. *West Stockbridge*, 14 Mass., 257, 261 ; *Trustees, etc.*, v. *Trustees, etc.*, 2 Hawks, 233.) The assessment lease was not in hostility to the true title, but in accordance with it. (*Bedell* v. *Shaw*, 59 N. Y., 46 ; *Sands* v. *Hughes*, 53 id., 287 ; *Jackson* v. *Rowland*, 6 Wend., 666, 670 ; Taylor's Landlord and Tenant, § 89.) If Mrs. Bender had purchased with notice, her claim would not be invalidated by it,

as her assignor was a purchaser with notice. (*Fort* v. *Burch*, 5 Den., 187 ; *Varick* v. *Briggs*, 6 Paige, 323 ; Story's Eq., § 409.)   This action could not be maintained against defendants jointly, as they were not jointly in possession.   (3 R. S. [5th ed.] 594, §§ 21, 22.)

Church, Ch. J.   This is an action of ejectment to recover an undivided interest in premises in the city of Albany, situated on the corner of South Pearl street and Hudson avenue.   The plaintiff claims, as devisee under the will of James Hilton, Sr., who died, as I infer, in December, 1836, by which he devised and bequeathed his residuary estate, real and personal, to Robert Hilton, Jr., a nephew, and Catherine, his wife, and Richard Hilton, the plaintiff, who was also a nephew of the testator.   The defendant is a daughter of Robert Hilton, Jr., and Catherine, his wife, and by descent and a conveyance from her brother is, in any event, entitled to their interest under the will, which interest is either an undivided one-half or two-thirds, depending upon the construction of the residuary clause, which will be hereafter noticed.   The defendant, however, claims title to the whole premises under a lease for one thousand years, to one John Hilton, by the corporate authorities of the city of Albany, dated in March, 1836, upon a sale for an assessment, and by him, through another person, to her ; and also under a like conveyance from the city authorities, in 1861, to one Paddock, and by him to her.   The plaintiff was non-suited at the trial, but the record does not state upon what ground the non-suit was granted.   The General Term affirmed the judgment upon the ground of a title in the defendant to the whole premises by adverse possession under the assessment deed of 1836.   This ground is now abandoned by reason of the recent decision of this court in *Bedell* v. *Shaw*, (59 N. Y., 46), holding that possession, to be adverse so as to ripen into a title when long enough continued, must be accompanied by a claim of title in fee, and hence, that a claim under such a lease is not sufficient, and is not in hostility to the title

of the owner.    But it is insisted that the defendant has affirm-
atively and conclusively, in law, established a title to the
whole premises by virtue of the two assessment deeds, and
especially by the first one, dated in 1836.

The deed or lease only from the mayor is produced.    No
other paper or proceeding was proved on the trial.    The
authority for making improvements and for levying and col-
lecting assessments therefor in the city, was derived from
sections four and five, chapter 164 of the laws of 1828,
which, in substance, were re-enactments of sections thirty
and thirty-one of chapter one hundred and eighty-five of the
laws of 1826.    By those sections it was made lawful for the
mayor, aldermen and commonalty of the city " to order and
direct " certain improvements, including the opening of
streets and the making and repairing of sewers, drains, etc.,
and upon the completion of any such work so ordered, to
cause an account of the expense to be made by the city super-
intendent or other person or persons, to be appointed by
them, and to apportion the same under oath among the houses
and lots intended to be benefited in proportion to the advant-
age which each was deemed to acquire, specifying the owner
or occupant, which apportionment was to be returned to the
mayor, etc., and when returned, they were to cause public
notice to be given of such apportionment for thirty days, and
if no cause was shown against confirmation, upon its approval
it was to be filed in the office of the clerk of the common
council, and then it was to be binding and a lien upon the
lands assessed.    The mayor, etc. were then authorized to sue
for and recover such assessment, or in case of refusal to pay,
cause a notice of such apportionment and of the amount
forming a part thereof to be published for three months,
requiring the owners of the respective lots to pay the assess-
ment, and in default, that such lot or lots would be sold at
public auction, and they were authorized to sell accordingly.

I have thus briefly abstracted the requirements of the law
to show that the legislature required official action and record
evidence of the principal steps preliminary to a sale, so that

the property rights of the citizen should not be sacrificed, except upon compliance with these public and formal acts.

It is well settled that every statute authority in derogation of the common law to divest the title of one and transfer it to another, must be strictly pursued. It is not a case for presuming that public officers have done their duty, but their acts must be shown, and the *onus* lies on the purchaser. The recitals in the deed are not evidence against the owner, but they must be proved true. (4 Hill, 86.) The statute does not declare that the deed shall be deemed *prima facie* evidence of the regularity of the proceedings or the sale, and hence these proceedings must be proved. The clause that the purchaser shall " hold the land against the owner and all persons claiming it," does not obviate the necessity of such proof. The clause is based upon the presumption that the statutory requirements have been complied with and are merely declaratory in that event of the nature of the interest which the purchaser is entitled to enjoy.

In tax sales there is a fundamental condition to their validity that there should have been a substantial compliance with the law in all the proceedings of which the sale was the culmination. " This would be the general rule in all cases in which a man is to divested of his freehold by adversary proceedings, but special reasons make it peculiarly applicable to the case of tax sales." (Cooley on Taxation, 324.) The proceedings are *ex parte*. The owner is to deprived of his land. The price usually paid is trifling, and hence it is peculiarly appropriate that strictness in observing the requirements of the law should be exacted. (25 Me., 359.) These general rules are now universally applied and do not require elaboration, and if applied in this case they would be plainly fatal to the defense founded upon the assessment deed of 1836.

It is insisted however by the learned counsel for the defendant, that from the lapse of time which has intervened since the deed was given (more than thirty years) and the alleged possession under it, a conclusive presumption may

be indulged that all the proceedings were regular and in accordance with the statute. This position cannot be sustained. The general rule laid down by Mr. Greenleaf in his work on Evidence that " when an authority is given by law to executors, administrators, guardians, or other officers, to make sales of land upon being duly licensed by the courts, and they are required to advertise the sales in a particular manner and to observe other formalities in their proceedings, the lapse of sufficient time (which in most cases is fixed at thirty years) raises a conclusive presumption that all the legal formalities of the sale were observed," may be conceded, but this rule does not justify the position insisted upon in this case. (Greenleaf on Evidence, § 20.) The rule does not apply to records and public documents which are supposed to remain in the custody of the officers charged with their preservation, and which must be proved, or their loss accounted for and supplied by secondary evidence.

The foundation of the proceeding in question was the action of the common council in ordering and directing the improvement, and equally indispensable was the confirmation, approval and filing of the apportionment which made the assessment " binding " upon the owners. Without these official acts the subsequent proceedings, including the deed, were a nullity. The acts of the mayor, aldermen and commonalty of the city of Albany were matters of record. They had a clerk, and the act specifically directs the apportionment to be filed in his office. The presumption is that these records and documents are in existence, and in the absence of evidence, if they cannot be found or their loss or destruction in some way accounted for or explained, the natural presumption is that they never did exist.

When the law exacts acts of record, and provides for perpetuating documentary evidence, it is unreasonable, because against the usual course of things, to presume without proof, that they once existed and have been lost. A presumption is an inference of a fact not known arising from its necessary or usual connection with others which are known. To infer

a record once existing and lost, because not found, where the law requires it should be kept, would reverse the rule and create a presumption of one fact from another not usually connected with it. Facts may be shown, doubtless, from which the existence of the records and their subsequent loss or destruction might be inferred. No such facts were shown in this case. The casual examination made, during the trial, can scarcely be called a search. There was no evidence, and certainly not sufficient, that the records are not in existence, and, if not, there were no facts proved to rebut the presumption arising in that event that they never did exist. When a person seeks, by a purchase of valuable property for a trifling sum at a tax sale, to cut off the title of the owner, it behooves him to see to it that the proceedings have all been in substantial accordance with the requirements of law, and that the proper evidence of the same has been preserved, and there is manifest propriety in applying this rule to a purchase by one sustaining the relations to the owner, which the evidence tends to show that John Hilton did.

Courts will not aid in supplying fundamental defects in such a case by presumptions. Again it appears, by a recital in the deed, that the three months' notice of sale was published in the Albany Argus, a paper then and now published in the city of Albany, and no reason was adduced or fact shown why the notice, as published, might not be produced.

Presumptions of regularity may be indulged as to notices and other intermediate steps not matters of record; but even then they are not always conclusive, but often depend upon the circumstances proved. When a purchaser at a tax sale has taken possession under his deed, and continued undisturbed, for a long period, in the peaceable enjoyment of the property, claiming by virtue thereof, and the owner is in a position to contest the title, and especially if he is chargeable with knowledge of the claim, the presumption is very strong, and as to some facts after thirty years may be conclusive, in favor of regularity. But if the purchaser should lie by,

before taking possession, until his deed was very old, he would come with a poor grace into court to ask for a presumption to supply facts which he did not venture to put himself in a position to establish when it was practicable, if they existed to prove them. (Cooley on Taxation, p. 350.) Between these extreme cases will be found many others partaking more or less of the elements of each. It is impracticable to lay down a rule applicable to all cases. Indeed, there is no fixed rule on the subject. It is clear that the age of the deed, while it may be important, is not decisive. In this case, as we have seen, it could not be found, as a question of fact, that the preliminary steps had been taken, or that the record evidence had ever existed, of the facts which were matters of record, and no evidence was given as to other facts from which an inference could be drawn. There was other evidence, bearing in a greater or less degree upon the character of the possession of John Hilton and the defendant, which it was proper to be considered. In the first place the plaintiff was in no position to contest the title until the death of Rachel Hilton, the surviving beneficiary under the will. His interest was a remainder after two lives. It does not distinctly appear when Rachel Hilton died, but I infer from the evidence that it was in the neighborhood of 1860, or later, and the action was commenced in 1871. The plaintiff was then, and is now, a non-resident of the State, and there is no evidence whether he had any knowledge of the claims now presented or not. There was evidence also tending to show that, at the time John Hilton bid off the premises at the tax sale and received the lease, he was in possession as a tenant of the owner, and also as an agent to some extent. This occurred while the owner was living in the spring previous to his death. The character of his possession afterwards was somewhat equivocal from the evidence. There was evidence that he brought forward his assessment deed when the will was read, but when that was does not appear. The testator died in December, 1836, but the will was not proved until 1839. It is quite probable that he intended to

claim the property by virtue of the tax title, as it was talked in the family, and it was in evidence that the defendant complained of his treatment of the heirs in this respect, and yet there was evidence tending to show that he afterwards supplied the life beneficiaries with groceries in payment for their interest in the use of the premises. The executors are both dead, and it does not appear that they ever had possession. In 1852, John Hilton made an assignment for the benefit of creditors, conveying, under general words, without description, all his property, real and personal, and in 1858 his assignees conveyed the premises to a third person for the nominal consideration of twenty-five dollars, who, for a like consideration, conveyed them to the defendant. It does not appear that the assignees ever had or claimed possession of this property during the six years intervening between the assignment and their deed. There is evidence tending to show that the defendant has received the rents since 1857, which implies that she has been in possession from that time. The deed from the assignees was not executed until 1858, and, if she was in in 1857, it must have been by virtue of her title under the will as co-tenant with the plaintiff, or, if Rachel Hilton was then living, possibly under some arrangement with her. The inferences to be drawn from these facts, bearing upon legal propositions, involved as to the effect of the purchases by John Hilton and by the defendant, and as to whether the premises were held under the tax title, and have been so held continuously since that period, are to be drawn by the jury. And these facts have some bearing upon the strength of presumptions which may be invoked to supply facts not capable from lapse of time of positive proof. (*Worthing* v. *Webster*, 45 Me., 270; Cooley on Taxation, 331, 332, and cases cited.)

It is not intended to intimate that the tax sale may not be upheld, but only that there was an entire failure of proof upon the trial, and that it is not a case for the application of a conclusive presumption of regularity. The assessment deed of 1861 to William S. Paddock is void. The commis-

sioners to assess the damages and recompense for widening Hamilton street, although appointed according to the statute then in existence (chap. 86 of the Laws of 1844), were not appointed in accordance with section 7 of article 1 of the constitution. In this respect the statute is unconstitutional, as this court decided in *Menges* v. *The City of Albany* (56 N. Y., 374.) This defect appeared affirmatively upon the trial, and as it was a substantial link in the chain of legal requirements necessary to bind the lands of the owners supposed to be benefited, the defect is fatal to the validity of the entire proceedings. The question in respect to the title of James Hilton, Sr., was not insisted upon in this court. The evidence would at least justify a finding of facts by the jury sufficient to establish a good title. A non-suit on that ground would have been erroneous.

As there must be a new trial, it is proper to determine the extent of the interest of the plaintiff in the premises under the will of James Hilton, Sr. The will, after devising and bequeathing the property of the testator to the executors in trust to apply the income, rents and profits to the support of the son of the testator, James Hilton, and his wife, Rachel, and the survivor for life, contained this clause : "I give, devise and bequeath the residue and remainder of my real and personal estate * * to Robert Hilton, Jr., son of my deceased brother Robert, and Catherine, his wife, and Richard, son of my brother Derrick, as tenants in common, and their heirs forever." There is nothing in the language indicative of an intent to give Robert Hilton, Jr., and his wife a half interest and the plaintiff the other half. The devise to Catherine, the wife, is as specific as to either of the others, and the language applies to her the same as the others, and I can see no reason for any distinction. The devise is to Robert, Catherine and Richard, as tenants in common, and to their heirs and assigns forever. It follows that the plaintiff's interest under the will is only an undivided third, instead of one-half as claimed. It is unnecessary to notice the other points.

The judgment must be reversed and a new trial granted, with costs to abide the event.

All concur, RAPALLO, J., absent.

Judgment affirmed.