GEORGE W. ZINK, APPELLANT, *v.* ANNA McMANUS AND JOSEPH RYAN, RESPONDENTS.

*Action of ejectment — actual possession, by the person named in a deed, creates a legal presumption of title — charter of the city of Buffalo — real estate owned by a resident must be assessed in his name — the failure of the assessors to do so vitiates a sale for the non-payment of taxes — the short statute of limitations, created by chapter 275 of 1880, as to commencing an action to test the validity of taxes and assessments, does not apply to an action of ejectment brought by an owner of the land sold.*

Upon the trial of an action of ejectment, brought to recover the possession of a lot of land in the city of Buffalo, it appeared that the defendants were in the actual possession of the property, claiming title thereto under a tax deed executed by the comptroller of the city pursuant to a sale for the non-payment of taxes levied upon it. The plaintiff, who was a resident of Buffalo, was, at the time the assessment was made, in possession of the premises, claiming to be the owner in fee under a deed from his grantor describing the lands in dispute.

*Held,* that the plaintiff by producing the deed, and showing his possession under the same, established a good and perfect title, as against the defendants, unless the tax proceedings were regular and valid.

The deed to the plaintiff described a parcel of land by metes and bounds so that it could be ascertained and located, and the oral proof showed that it was the land described in the complaint. Following the description was a statement, that the premises conveyed were the same as were conveyed by deed to the plaintiff's grantor, referring to that deed, by its date and time of record in the county clerk's office. The description of the lands in the deed referred to did not embrace the lands in dispute.

*Held,* that, as the premises intended by the parties to be conveyed to the plaintiff were fully described, the reference to the deed of his grantor should be rejected as surplusage.

The lands in question were sold in April, 1884, for a tax levied thereon in 1883, and bid in by the comptroller, who thereafter assigned the certificate to the defendant McManus, to whose assignee a deed, prepared in the usual form

of a tax deed and executed by the comptroller, was delivered; the plaintiff having failed to redeem the lands from the sale within the time fixed by the statute.    The charter of the city required that the lands in question should be assessed in the name of the owner, as the plaintiff was, at that time, a resident of the city and the lands were in the actual possession of his tenant, but it appeared upon the trial that the said lands were assessed to Joseph and Peter Zimmerman, who made no claim of title to them, and that they were sold as being assessed to them.

*Held,* that the omission of duty on the part of the assessors to assess the lands to the plaintiff, and the assessing them to another, was fatal to the defendants' claim of title.

The question as to whether, by declaring in section 8 of chapter 275 of 1880, that the comptroller's deed should be considered conclusive evidence that the sale was regular, the legislature intended to make the deed conclusive evidence that the publication of the notice of sale was regular, or whether it was limited to the mode and manner and time and place of the sale, was not passed upon as the assessment was illegal and void for the reasons before stated.

Section 9 of chapter 275 of 1880, providing for the collection of unpaid city taxes and local assessments in the city of Buffalo, contains, among other provisions, the following, viz.: " Any action or proceeding commenced by any person or persons to test the validity or regularity of any tax levied or assessment made shall be commenced within one year from the time of the delivery of the roll, in which said tax or assessment is contained, to the treasurer; the invalidity or irregularity of any tax or assessment shall not be available as a defense to any action or proceeding commenced after the expiration of one year from the delivery of the roll, as aforesaid, for the collection of said tax or assessment, or for the enforcement of any right or title, by virtue of any sale thereunder, unless an action or proceeding to test the validity or regularity of such tax or assessment shall have been commenced within the time hereinbefore limited for. commencing the same, and shall be still pending, or such tax or assessment shall have been adjudged to be irregular and invalid."

*Held,* that it was not intended by the legislature that this provision should be applicable to actions like the one at bar, in which a landowner was seeking, by the common-law action of ejectment, to regain the possession of his land from one who claimed to have acquired title thereto by a tax deed.

That the statute was, by its own terms, limited to a different class of cases, and had no application when the title to real estate, sold for the non payment of the tax levied thereon, was in question.

APPEAL from a judgment entered in the Erie county clerk's office on December 13, 1887, upon a verdict in the defendants' favor, directed by an order of the court, and from an order of the Erie County Special Term, denying the plaintiff's motion for a new trial.

This was an action of ejectment.    The defendants were in the actual possession of the property, and claimed that the plaintiff's

title to the premises, as set up in his complaint and proved on the trial, had been transferred to the defendant, McManus, by virtue of a tax deed executed by the comptroller of the city of Buffalo, in pursuance of a sale of the property for the non-payment of taxes levied upon the premises. The premises consisted of about seven acres, and is of the value of about $7,000.

*Shire & Van Peyma,* for the appellant.

*Day & Parker,* for the respondents.

PER CURIAM:

At the time the assessment was made of the lands in dispute, upon which the defendants rely in support of their tax title. the plaintiff was a resident of the city of Buffalo, and in the possession of the premises by his tenant, Nathan Vosseler, claiming to be the owner in fee, and the deed from his grantor described the lands in dispute. The trial court held that the plaintiff, on producing that deed and showing his possession under the same, established a good and perfect title, as against the defendants, and was entitled to a verdict in his favor unless the tax proceedings were regular and valid, so as to uphold the comptroller's deed, upon which the defendants rely as constituting a statutory transfer of the plaintiff's title to the defendant, Anna McManus. This ruling was correct. The defendants did not show any connection with the title, except as the same is based on the comptroller' deed. A conveyance of lands to a person who enters into actual possession thereunder creates a legal presumption of a good title in the grantee and occupant, as against all intruders and claimants who are unable to show a better title. Therefore, the claim of the defendants, that the plaintiff failed to make out a *prima facie* case, is not well founded.

The defendants also make the point that, in the deed under which the plaintiff claims title, the lands are not described so that the same can be located, and, for that reason, the plaintiff failed to show title to the lands in question, and should have been nonsuited. That deed described a parcel of land by metes and bounds, so that the same can be ascertained and located, and the parol proof shows that they are the lands described in the complaint. Following the

description thus given there is this statement: "Being the same premises conveyed" to the plaintiff's grantor, and giving her name and referring to that deed by its date and time of record in the Erie county clerk's office. The description of the lands, as given in the last named deed, does not embrace the land in dispute. The respondents contend that the reference to this deed is controlling, and that the lands conveyed to the plaintiff are the lands therein described, and none other.

As the premises intended by the parties to be conveyed to the plaintiff were fully described, the reference made to the deed of his grantor by the plaintiff's grantor will not frustrate the conveyance under which he claims title, and the same may be rejected as surplusage; and as the deed referred to contains the description of another distinct parcel of land from the one in controversy, the reference thereto may be treated as made by mistake. (*Mason* v. *White*, 11 Barb., 173.)

The order directing a verdict in the defendants' favor cannot be sustained, unless it is made to appear by competent evidence, produced on the trial, that the assessment and the levying of the tax on the plaintiff's lands, and the sale of the same for non-payment, were regular and in substantial compliance with the statute authorizing and regulating the same. (*Hilton* v. *Bender*, 69 N. Y., 75; *Van Rensselaer* v. *Witbeck*, 7 id., 517.) By the city charter assessors are to be appointed for the several wards into which the city is divided, and they possess the powers and are charged with the duties of town assessors, and they are required to prepare an assessment-roll for each ward, which shall contain an assessment of the taxable lands therein, substantially in the form in which town assessors are required to make such rolls, except that no distinction shall be made between the lands of non-residents and residents, but those of both shall be assessed in form as resident lands. (Tit. 2, §§ 41, 42.) The general statutes of the State, to which reference is made, regulating the mode and manner of making an assessment of lands, in direct and positive terms, requires the assessors to make an assessment-roll, divided in four separate columns. In the first they shall give the names of the taxable inhabitants; in the second the quantity of land; in the third the value of the same, and in the fourth the entries required to be made relating wholly to personal property; and under

the city charter that class of property is to be assessed in a separate and distinct part of the assessment-roll. (1 R. S., part 1, tit. 2, chap. 13, §§ 9, 12.) When the same is completed the roll is to be delivered to the said comptroller, who is authorized to apportion, on the property assessed, the taxes authorized to be levied by the common council. (Tit. 5, § 10.) In the case of non-payment of the taxes levied on lands, within the time prescribed by the charter, the comptroller is authorized to sell the same in pursuance of the provision of chapter 275 of the Laws of 1880, which was passed subsequent to the enactment of the provisions of the charter referred to.

The lands in question were sold in April, 1884, for the tax levied thereon in the year 1883, and were bid in by the comptroller for and on behalf of the city, which he was authorized to do, for the want of a bid from other parties equal to the amount of the tax levied. Thereafter the comptroller assigned the certificate of sale to the defendant McManus, and the plaintiff having failed to redeem the lands from the sale within the time fixed by the statute, a deed was prepared in the usual form of tax deeds, and executed and delivered by the comptroller to the assignee of the certificate. The plaintiff interposes several objections to the validity of the tax proceedings, upon which he relies to defeat the tax deed. He first claims that the lands were not assessed to the plaintiff nor his tenant, but to other persons who made no claim of title to the premises ; and, secondly, that in all the proceedings, including the assessment, there was an imperfect description of the lands, so that the same cannot be located thereby with certainty.

The defendant did not produce any evidence of the tax proceedings, except the comptroller's deed, and for evidence that the prior proceedings were in conformity to the requirements of the statute they relied upon the provisions found in the eighth section of the act of 1880, which declares that when lands have been sold for non-payment of taxes, and have not been redeemed, the comptroller shall execute a deed to the purchaser, or his assigns, a conveyance of the real estate so sold, which conveyance shall vest in the grantee 'an absolute estate in fee ; and that such deed " shall be conclusive evidence that the sale was regular, and, also, presumptive evidence that all previous proceedings were regular, according to law and the provisions of

this act." As the deed was in due form, and executed and acknowledged in compliance with the several provisions of the said act upon its production, the defendants made out a *prima facie* case of regularity in procedure, upon which the defendants might rely in support of the validity of the tax deed, unless the plaintiff by competent proof made it appear, as a matter of fact, that some of the essential provisions of the statute were not observed and performed.

At the time the assessment was made the plaintiff was a resident of the city of Buffalo, and the lands were in the actual possession of his tenant, and they were assessed to Joseph and Peter Zimmerman, who, as the proof shows, made no claim of title to the lands. The requirement of the statutes that lands should be assessed in the name of the owner or occupant was disregarded. The provisions are, first: Section 1. Every person shall be assessed in the town or ward where he resides, when the assessment is made for all land then owned by him within such town or ward, or occupied by him, or wholly unoccupied. Section 2. Lands occupied by a person other than the owner may be assessed to the occupant of lands of non-residents, or, if the owner resides in the county, in which such lands are located, to such owner. By the provisions of the city charter, already quoted, no distinction is to be made by the assessors between the lands of residents and non-residents, and the same are to be assessed in form as the lands of resident owners. There is no authority, whatever for making an assessment, except in the mode and manner pointed out in these clauses of the statute. Unless these provisions were observed and complied with by the assessors, they acquired no jurisdiction over the subject-matter, and the assessment was unauthorized and void. (*Whitney* v. *Thomas*, 23 N. Y., 281; *Buffalo and S. L. R. R. Co.* v. *Supervisors of Erie Co.*, 48 id., 101; *Stewart* v. *Crysler*, 100 id., 378.)

In the first of these cases, the court, in its opinion, gave the reasons why the statute should be observed, as follows:

" If lands belonging either to a resident or a non-resident could be assessed to a third person having no connection with the premises, and if such an assessment could be made, the foundation of a sale and conveyance of the lands by the comptroller, great inconvenience and injustice might result. The true owner would be misled.

He would have no notice of the assessment or of the proceedings upon it, and it would require extraordinary vigilance to discover and trace out such proceedings. The law protects the owners of property from being placed in such a position, by requiring that, when they are to be divested of their title to such property by any statutory proceedings, the directions of the statute must be strictly pursued." The assessment-roll was not produced in evidence on the trial so as to exhibit to the court the form of the entry made therein by the assessors, but a witness was produced by the plaintiff, who held official position in the comptroller's office at the time of the assessment and sale, who testified that he conducted the sale in behalf of the comptroller, and that he had then before him the assessment-roll and proceedings, on file in the comptroller's office, connected with such assessment and sale, and he stated, without any objection being interposed by the defendants, that the premises were assessed to Joseph and Peter Zimmerman, and that the search showed that the title to the lands was in the plaintiff. He also produced the notice of sale as published, and it was therein stated that the premises were assessed to Joseph and Peter Zimmerman.

The omission of duty on the part of the assessors to assess the lands to the plaintiff, and, in fact, assessing them to another, is fatal to the defendants' claim of title. It appears from the record, as we read it, that the notice of sale as published was also defective. It was stated therein that the lands were owned to Joseph and Peter Zimmerman, and if we are correct in this respect, then the notice of sale was defective beyond all controversy.

The statutes declares that the comptroller's deed, when executed in due form, shall be conclusive evidence that the sale was regular. The question is presented, in construing this provision of the statute, whether it was the intention of the legislature to make the deed conclusive evidence that the publication of the notice was regular, or whether it was limited to the mode and manner and time and place of making the sale, but we have concluded to pass the question without giving the statute a construction in this particular, for the reason that we have reached the conclusion that the assessment was illegal and void for the reason before stated ; and that there is nothing to support the validity of the deed upon which the defendants stand in support of their claim of title.

The final question presented is made by the defendants, who contend that if it should be held that irregularities did occur in the tax proceedings, and that the comptroller's deed conveyed to them no title, the plaintiff is barred, from taking any advantage of the errors pointed out, by the provisions of the short statute of limitations contained in section 9 of the act of 1880, which declares that "it shall be presumed that every tax levied and assessment made is valid and regular; and that all steps and proceedings required by law were taken and had, until the contrary shall be made to appear. Any action or proceeding commenced, by any person or persons to test the validity or regularity of any tax levied or assessment made, shall be commenced within one year from the time of the delivery of the roll, in which said tax or assessment is contained to the treasurer; the invalidity or irregularity of any tax or assessment shall not be available as a defense to any action or proceeding commenced after the expiration of one year from the delivery of the roll, as aforesaid, for the collection of said tax or assessment or for the enforcement of any right or title by virtue of any sale thereunder, unless an action or proceeding to test the validity or regularity of such tax or assessment shall have been commenced within the time hereinbefore limited for commencing the same, and shall be still pending, or such tax or assessment shall have been adjudged to be irregular and invalid." It is conceded that this action was not commenced within one year from the time the tax roll was delivered to the treasurer. It is our opinion that it was not intended by the legislature that this provision should be applicable to actions like the one at bar and in which a land owner is seeking by the common-law action of ejectment to regain the possession of his land from one who claims to have acquired his title by a tax deed. The statute, by its own terms, is limited to a different class of cases, and has no application where the title of real estate sold for the non-payment of the tax levied thereon is in question. The preceding sections of the same act point out, in detail, the course of procedure to be observed by the comptroller in selling real estate for unpaid taxes, and also when and how an owner may redeem his lands from the sale; and also create a presumption of regularity in conducting the proceedings in support of the comptroller's deed. No other provision relative to that point is found in any of the subsequent sections of the statute. The first clause

of the statute now under consideration applies to equitable actions instituted for the purpose of testing the validity of any assessment made, or tax levied upon the property, either real or personal, before the proceedings have been conducted to a sale of the property of the owner, and also to such proceedings as are authorized by the statute to set aside any irregular assessment or erroneous levy of taxes. The remaining provisions relate to defenses in actions at law, which may be brought by the comptroller to enforce the personal liability of the landowner to pay the tax created by section 11, which declares that when a tax "shall remain unpaid for six months after the warrant for its collection has· been placed in the hands of the comptroller of said city, the said comptroller may maintain an action in his name of office for the amount of such tax, fees, and expenses remaining unpaid and uncollected, * * * in any court of competent jurisdiction in which the proceedings, costs, judgments, and executions shall be the same, and with like effect as in actions between other public officers and individuals, and the amount collected by any such suit shall be used and applied by said comptroller in such manner as though the same had been collected by the sale of real estate."

The limitation created by the statute clearly applies to an action prosecuted to procure a personal judgment against the person assessed, and also to actions or proceedings instituted for the enforcement of any right or title arising out of the sale of property, real or personal, other than real estate assessed, and which was sold to pay the tax levied thereon. In other words, that these provisions have no application when the question litigated relates wholly to the title to real estate which has been sold for the non-payment of taxes imposed thereon. With a view of ascertaining the meaning of the statute, the same should be read in connection with the other provisions of the charter relative to the same subject. By the charter, the assessment-roll is to be delivered by the comptroller to the treasurer, after the former has spread the tax thereon, and six months at least must expire from the time of such delivery before any land can be sold for taxes, and nearly a year must necessarily expire before a sale can take place; and more than a year may intervene before the comptroller causes notice of sale to be served on the owner, requiring him to redeem, under any provision of the

charter. (Tits. 5 and 7, § 5.) For this reason, it seems clear that the limitation is intended to apply in the instances specifically enumerated in section 9. If the defendants' interpretation of the statute is to prevail, then the practical and only way an owner can successfully challenge the validity and regularity of an assessment of his lands, and the levy of the tax thereon, is to commence an equitable action, for the purpose of having the same declared void and set aside within the time mentioned in the statute, and that, as it is seen, may have expired before the sale takes place and notice thereof served on the owner, requiring him to redeem. If the statute is susceptible of such a construction, then it is, we believe, without precedent in the system of tax laws in this State, and the same may be characterized as severe and harsh in its terms, and as imposing a severe penalty on the owners of the land for omitting to institute legal proceedings to cancel a tax before the property assessed has been sold for the non-payment of the tax levied thereon, or he has been notified of proceedings instituted for that purpose. The provision is in the nature of a healing statute, passed for the purpose of curing defects in the tax proceedings, and is retrospective in its operation, so far as it attempts to cure defects in making the assessment. Statutes enacted for the purpose are not effective, and do not reach and cure defects which are jurisdictional. That was held in *Ensign* v. *Barse* (107 N. Y., 329). As we have already pointed out, the assessors did not obtain jurisdiction of the subject-matter, and, for that reason, the assessment was unauthorized and void, and, we think, is not cured by this statute.

The learned counsel for the defendants, in support of his argument, relies upon the decision rendered at the Erie County Special Term by Mr. Justice DANIELS, in *Boschs et al.* v. *Heutter* (not yet reported). The tenant set up, as a defense, that he had acquired title to a portion of the demised premises, by virtue of a tax sale and comptroller's deed, and the learned judge held that, although it appeared that the lands were not assessed to the owner, as required by the statute, and that the sale was, therefore, unauthorized and void, and the comptroller's deed was without valid prior proceedings to support it, yet, as the action to enforce the payment of rent was not commenced until more than a year after the assessment-roll was delivered by the comptroller to the treasurer, he was barred of the right to

test the validity and effect of the comptroller's deed. The reasons there assigned for holding that the case was within the limitations prescribed by the act were that "the object and purpose of the statute was to terminate and quiet controversy relating to the validity of city taxes and assessment after the expiration of this period of one year. When that has expired, their validity is not to be questioned, either by an action or by way of defense, and this law must be intended to include a case of this description, when the plaintiffs can only recover by invalidating or securing a determination annulling the tax deed. The object was to render the city taxes unassailable after this period of one year; and if it should be held inapplicable to a suit between individuals testing a title intended to be conveyed by the city authorities, the purpose of the legislature, to a great extent, would be defeated, and there would be no propriety in holding that the title had become valid in favor of the city for the reason of this delay; and that it might still be impeached by proceedings against a person purchasing the property from the city for the non-payment, and such clearly are not the designs and intentions of the legislature."

Our examination leads us to the conclusion which we have already expressed, and we are unable to agree with the learned judge that the statute has a purpose and meaning so broad as the one stated in his opinion, from which we have made the foregoing quotation.

The judgment and order should be reversed and a new trial granted, with costs to abide event.

Present — BARKER, P. J., HAIGHT, BRADLEY and DWIGHT, JJ.

Judgment and order reversed and a new trial ordered, costs to abide event.