(61 App. Div. 66.)

COTTLE et al. v. CARY et al.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1901.)

TAXATION—ASSESSMENT—NONRESIDENTS.

     Under Laws 1870, c. 519, tit. 2, § 42, as amended by Laws 1891, c. 105, § 138 (Buffalo City Charter), providing that an assessment of lands of a nonresident shall be assessed to the owner in form, where vacant and unoccupied land owned by a nonresident was not assessed to him, but

70 N.Y.S.—9

to another, the assessment was valid, and the tax lien attached, since the assessment of lands belonging to nonresidents had always been against the lands, and not a personal one against the owner, and the statute expressly provides the assessment shall be in form merely to the nonresident.

Appeal from special term, Erie county.

Action by Octavius O. Cottle and another, as executors, against Walter Cary and another. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

Albert H. Jackson, and W. H. Cuddeback, for appellants.
Edmund P. Cottle, for respondents.

WILLIAMS, J. The judgment appealed from should be reversed, and a new trial ordered, with costs to appellants to abide event. The appeal is based upon the decision of the court and exceptions thereto. There are no "case" and exceptions. No evidence is contained in the record. The facts, briefly, as found by the court are: That at the time of the commencement of the action, January 29, 1899, and for more than a year prior thereto, the plaintiffs were owners and in possession of the real property described in the complaint. That annually from 1889 to 1897, both inclusive, this property was assessed and taxed in the city of Buffalo under the provisions of its charter, such taxes being for general city purposes, including in some years unpaid local assessments. That none of said assessments or taxes were paid. The property was sold for such unpaid taxes, and defendant Thomas Cary became the purchaser at such sales in the years 1890, 1891, 1892, and 1893, and is now the holder and owner of certain deeds of conveyance executed and delivered to him according to law as such purchaser. That he also became the purchaser at such sales in the years 1894, 1895, and 1896, and is the owner and holder of certain certificates of sale executed and delivered to him as such purchaser. The defendant Walter Cary became the purchaser on such sales made in 1897 and 1898, and is now the holder and owner of certain certificates of sale executed to him as such purchaser. That annually from 1887 to 1897, both inclusive, said property was also taxed for general county and state purposes under the provisions of law. Such taxes were not paid. By reason thereof the property was sold as provided by law, and the defendant Thomas Cary became the purchaser on such sales made in 1888, 1889, 1890, and 1891, and is now owner and holder of certain conveyances made and executed to him as such purchaser; and he also became the purchaser on sales made in 1892, 1893, 1894, and 1895, and is now the holder and owner of certain certificates of sale executed to him as such purchaser. It was also found that all the assessment rolls were as required by law. The property was sufficiently and properly described therein. Notices to redeem from the sales were served on all parties entitled to notice, and that all proceedings taken and had by the city and county with reference to the taxes and assessments and to the sales, certificates, and con-

veyances were in the time and manner required by law, and all provisions of law relating to the taxes and assessments were duly complied with, except that in the tax rolls made for all the years the property was not assessed to the owner or occupant thereof, but to a third person; and for this one error the court, as matter of law, held that all the taxes and assessments and the certificates and conveyances were null and void, and ordered judgment accordingly, and directed the certificates and conveyances to be canceled of record, and the taxes, sales, and records of deeds to be canceled on the books and records of the city and county offices, and that the defendants pay the costs of the action. It will be observed that it does not appear who the third person was to whom the property was assessed, or whether he was or was not a resident of the city of Buffalo or of Erie county when the assessments were made. It does not appear who was the owner of the property prior to January, 1898, and it does not appear whether the owners, the plaintiffs or others, were residents of the city of Buffalo or the county of Erie when the assessments were made. It does not appear whether there was any occupant of the property, or whether, if any, he resided in the city of Buffalo or county of Erie when the assessments were made. The finding that the plaintiffs were in possession was not a finding they were occupants of the property. So far as appears, the property was all the years vacant and unoccupied, and the owners were nonresidents. We are therefore to consider the question whether, as to vacant and unoccupied property owned by nonresidents, the assessments were void because not assessed to the nonresident owner, but to some abstract other person. If the facts as to ownership and occupancy and residence are really different, the record does not show it; and the plaintiffs must rest on the record, and, if defeated upon that, correct the facts upon a new trial. By section 42, tit. 2, c. 519, Laws 1870,—being the chapter under which these assessments were made,—it was provided:

"They [the assessors] shall prepare an annual assessment roll of each ward, which shall consist of two parts; the first part shall be the assessment of the taxable lands of the ward, substantially in the form in which town assessors are required to make them, except that no distinction shall be made between the lands of residents and non-residents, but those of both shall be assessed in form as resident lands. The second part shall contain the names in alphabetical order of all inhabitants of the city, corporations and associations deemed taxable in the ward, upon personal estate, and opposite to such name shall be set down the amount of the personal estate assessed to them respectively."

Section 138 of the charter as amended by chapter 105, Laws 1891, contains substantially these same provisions, though in slightly changed language. We do not need to quote the provisions of the statute as to the form in which town assessors were required to make assessment of lands. By virtue of the provisions of the charter and the provisions of the statute as to towns it is apparent that there were but two differences between assessments of lands under the charter and in towns: (1) In towns the lands and personal were assessed all together. Under the charter the lands were assessed in one separate and distinct part, the personal in another

.part. (2) In towns the lands of nonresident owners were assessed as such to the occupant, if any; if not, by describing them in a part of the roll separate from the other assessments. Under the charter nonresident lands were assessed in form to the owner, there being no occupant. The first difference was a matter of form merely, the charter requiring the lands, whether resident or nonresident, to be assessed in a separate part of the roll from the personal assessments. What form the assessment of lands took,—whether to owners or occupants in the alphabetical order of their names or by streets and numbers,—does not appear from the record. The statute did not require any particular form. It was left to the discretion of the assessors. We understand (and may very likely take judicial notice of the form of the rolls) that the assessment of lands was not by alphabetical order of names of owners or occupants, but by streets and numbers. The second difference was in the form of assessment of nonresident lands, under the charter, to the nonresident owner. This form was not complied with in this case, and the question is whether this omission of form rendered the assessment invalid. It seems to us it did not. This was an assessment of the lands, and not of the nonresident owner. If the respondents' contention is correct, and no nonresident owner of the property could be found, the lands could not be assessed at all. If there was dispute and uncertainty as to the real owner, then the assessment would be rendered void by a mistake or misjudgment of the assessors as to who the real owner was. Such a construction should not be given to the statute. It is not necessary. The statute expressly required the assessment should be in form, merely, to the nonresident owner, not in substance; and no reason is apparent why a failure to comply with such form should deprive the public of its right to have this property bear its proper burden of taxation. Whatever may be said as to the necessity of assessing resident lands to resident owners or occupants, of making such assessment a personal one against the owner or occupant, as well as against the lands themselves, certainly as to the nonresident lands it should not be held that the assessment against a nonresident was a personal one, and that the assessment of the lands was invalid, unless the personal assessment against the nonresident owner was complied with. The charter (Laws 1891, § 106) provided that the taxes were a lien upon the lands upon which they were assessed for 10 years, etc. This lien, we think, was created by the assessment of lands owned by nonresidents which were not occupied, without the owner's name being properly put upon the roll, or even by putting the name of some person there who was neither an owner nor occupant. See Collins v. City of Long Island City, 132 N. Y. 321, 30 N. E. 835. It could hardly be said the provisions of the charter imposing a personal liability upon the owner of lands by virtue of the assessment, and providing for the enforcement of such liability, were applicable to nonresident owners whose names were entered upon the assessment rolls in connection with the assessment of lands. The assessment of resident lands in towns was always personal against the owner or occupant. Under this charter such assess-

ment was personal also, and was made one against the lands themselves besides. But the assessment of nonresident lands was always one against the lands themselves, and never a personal one against a nonresident owner. The charter, by making these lands assessable, in form, as resident lands, did not change the real nature of the assessment as one against the lands merely, and such assessment would therefore create a lien upon the lands, though no personal assessment was made in form against the nonresident owner. In the case of Zink v. McManus, 49 Hun, 583, 3 N. Y. Supp. 487, affirmed 121 N. Y. 259, 24 N. E. 467, both the owner and occupant of the lands assessed were residents of the city of Buffalo, and yet the names put opposite the lands in the roll were neither owners nor occupants. That case, whatever it held, is clearly distinguishable from the one we are here considering.

For the reasons hereinbefore stated, we think the judgment appealed from should be reversed, and a new trial ordered, with costs to appellants to abide event. All concur.