COTTLE et al. v. CARY et al.

(Supreme Court, Appellate Division, Fourth Department. May 13, 1902.)

TAXATION—ASSESSMENTS—LAND OF RESIDENTS.

Rev. St. c. 13, tit. 2, art. 2, § 9 (2 Banks & Bros.' Rev. St. [9th Ed.] p. 1683), provides that in assessments there shall be in the first column of the roll the names of all the taxable inhabitants, then in separate columns, opposite the quantity of land, its value, and the personalty. Section 11 provides for designation of nonresident lands in the same roll, but *separately from other assessments*. Laws 1870, c. 519, tit. 2, § 42 (Buffalo City Charter), provides for assessment rolls of each ward, the first part to be the assessment of the taxable lands of the ward, substantially in the form in which town assessors are required to make them, except that there shall be no distinction between lands of residents and nonresidents, but those of both shall be assessed in form as resident lands; and the second part to contain the names of all taxable inhabitants, and opposite them the amount of personalty assessed to them respectively. Section 77, Laws 1891, c. 105, provides for action for collection of unpaid taxes. Section 78 provides for issuing warrants for such taxes where there is reasonable grounds for believing that the person chargeable with payment thereof has goods and chattels liable for levy and sale for such taxes. Pursuant to such warrants, which are simply transcripts of the roll, by sections 86 and 87 the collector proceeds against the person opposite whose name such taxes are set down. *Held*, that under the charter, as well as the Revised Statutes, in assessing resident lands, the name of the owner or occupant must be contained in the roll opposite the land.

Williams, J., dissenting.

Appeal from special term, Erie county.

Action by Octavius O. Cottle and another, executors of John J. P. Read, deceased, against Walter Cary and another. From judgment for plaintiffs (70 N. Y. Supp. 129), defendants appeal. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Percy S. Lansdowne, for appellants.

Octavius O. Cottle, for respondents.

SPRING, J. This action was brought by the plaintiffs, as the owners in fee of the lands described in the complaint, to set aside certain tax deeds and tax certificates. Upon a prior appeal (61 App. Div. 66, 70 N. Y. Supp. 129), and where the facts are fully stated, a new trial was granted because the record did not show that the land was occupied when it was assessed, but, "so far as appears, the property was all the years vacant and unoccupied, and the owners were nonresidents," and, if such were the facts, the assessments were valid. The case comes to us after another trial without the evidence, but upon the decision of the trial court containing the facts found in detail. It appears from the findings that the lands in controversy were not assessed to the owner or occupant, but to a third person; that during all the years covered by the assessments upon which the tax deeds and tax certificates are founded the owner of the lands resided in the ward where they are situated. The plaintiffs contend that the assessments, and conse-

quently the tax deeds and certificates, are void for the reason that the assessments were made to a third person, instead of to the occupant or true owner. The appellants urge that under the provisions of the charter of the city of Buffalo this is unnecessary. The bone of contention is whether, in assessing resident lands in the city of Buffalo, the name of each owner or occupant must be contained in the roll opposite the parcel owned or occupied by him. Under 1 Rev. St. c. 13, tit. 2, art. 2, § 9 (2 Banks & Bros.' Rev. St. [9th Ed.] p. 1683), the manner of assessment prescribed requires in the first column of the roll "the names of all the taxable inhabitants in the town or ward as the case may be"; then in separate columns, opposite the quantity of the land, its value, and the personal property. Nonresident lands are designated in the same roll, but separately from other assessments. Section 11 of the same article. The form here prescribed must be adhered to in order to give validity to the assessment or tax title dependent upon it. Whitney v. Thomas, 23 N. Y. 281–284; Stebbins v. Kay, 123 N. Y. 31, 25 N. E. 207; Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391. It is clear, therefore, that the assessments upon which the tax titles of the defendant rest are void unless the charter of the city of Buffalo authorizes a different method than prevails generally throughout the state. In this case the assessments upon which the sales were made were both local and for county and state purposes, and ran along from 1887 to 1897, during no part of which period were the taxes paid. The charter of the city of Buffalo is Laws 1870, c. 519, as amended by Laws 1891, c. 105, but, so far as these assessments are concerned, the change in the amended statute is unimportant. Section 42, tit. 2, c. 519, Laws 1870, reads as follows:

"The board [of assessors] shall prepare annual assessment rolls of each ward, which shall consist of two parts; the first part shall be the assessment of the taxable lands of the ward, substantially in the form in which town assessors are required to make them, except that no distinction shall be made between the lands of residents and non-residents, but those of both shall be assessed in form as resident lands. The second part shall contain the names in alphabetical order, of all inhabitants of the city, corporations and association deemed taxable in the ward upon personal estate, and opposite to such name shall be set down the amount of the personal estate assessed to them respectively."

It is obvious that the scheme intended by this enactment differs from that contained in the Revised Statutes in that the distinction between the lands of nonresident owners and those of resident owners was done away with, and all were treated as resident land, so far as the form of assessing was concerned. But in other respects the purpose was to adhere to the form applicable in town assessments, and the only departure, apparently, was to render effective the abrogation of the distinction referred to. Had it been intended to deviate from the mode provided in the Revised Statutes in so important a particular as omitting the name of each owner from the roll, we should expect to find a clear expression of that intention in the statute itself, instead of being left to a dubious construction of the statute. It is important in an assessment roll that the fullest opportunity be given to the individual assessed to know

precisely what the assessment is of each piece of property which he may own in order that he may keep advised of what is being done by the taxing authorities with reference to it. The right to appear before the board and review its action may be important to him, and, in addition to these privileges, his land may be sold for nonpayment of taxes, and so it is essential that the mode long in vogue in the method of making assessments should be followed, unless the statute unmistakably has made a change. The exclusion of the owner's name from the roll is a radical departure from the Revised Statutes, for the pith of that statute is that the assessment is to the taxable inhabitant, and that furnishes the guide to each person desiring to examine the roll. The argument of the appellants is that under the Revised Statutes in the assessment of lands the tax becomes a personal liability against the person assessed, while the purpose of the charter of the city of Buffalo is to make it a lien on the land primarily. That is, the change involves a tax which is a lien on the land, instead of a liability against the person. The plan provided in the Revised Statutes (2 Banks & Bros.' Rev. St. [9th Ed.] p. 1690 et seq.) is to proceed against the person, the collector possessing authority in case of nonpayment to levy "by distress and sale of goods and chattels" of the delinquent. In case of failure to enforce payment, the taxes are returned unpaid, and subsequently the land may be sold as lands of nonresidents. Laws 1855, c. 427, par. 5; Newman v. Supervisors, 45 N. Y. 676. The course of procedure, therefore, seems well defined as to assessments made upon real estate and the collection of taxes pursuant to the Revised Statutes. The tax imposes a personal liability against the person assessed, but ultimately the land can be taken to meet the obligation. The point made by the appellants' counsel is that under the charter the tax is made a lien upon the land, and he argues from that premise that the land is the primary fund out of which the tax must be paid. Section 106 of the charter (and which is the same section of chapter 105 of the Laws of 1891) does make the tax from its inception a lien upon the lands assessed for the period of 10 years. We do not find, however, any provision in the charter for the sale of land assessed by the tax collector. Section 77 provides for an action by the city comptroller for the collection of unpaid taxes, certainly assuming there is a personal liability for their payment. The succeeding section makes provision for issuing warrants to collectors for unpaid taxes by the treasurer where he "has reasonable grounds for believing" the person chargeable with the payment of the taxes "has goods and chattels liable for levy and sale for such taxes." Both of these sections are meaningless unless there is a person to be sued, and against whom the process is to be directed. If the land were to be assessed without any reference to the person owning or occupying it, the sole remedy would be against the land itself, for the individual would not be known in the transaction. The warrants referred to are simply transcripts of the roll; and pursuant to them, by sections 86 and 87, the collector proceeds against the person "opposite whose name such taxes are set down." Of like effect is section 89. When the treasurer

has returned the roll, the unpaid taxes against the real estate are enforced by its sale by the city comptroller in proceedings like those authorized by the Revised Statutes. Section 107 et seq. The whole scheme, therefore, is patterned after the mode which has long been embodied in the general law, and to which we have already adverted. The fact that a lien is expressly provided by the charter does not indicate any departure from the settled plan of assessments. The land of every owner may eventually be sold to meet the taxes upon it, and a lien exists as effectively as the express one upon which so much is based. The land of the farmer could not be sold to pay the taxes against him unless a lien thereon existed. Even though he has parted with his title, the land has still fastened to it this indebtedness, and the only relief from the burden is by payment, if validly assessed. While, therefore, the charter in explicit terms makes the taxes a lien upon the land, it permits no resort to it until the remedies ordinarily available against a tax debtor have been exhausted.

In Newell v. Wheeler, 48 N. Y. 486, the assessment had been made for local improvements against a person not the owner, and it was held invalid. In that case the tax was, by the city charter, made a lien upon the land, but the method of enforcement originally was against the person, following a rule that seems well-nigh invariable. The counsel for the appellants insists that this construction will operate to relieve nonresident lands from assessments, as the charter provides that all lands shall be assessed in form as resident land. The nonresident land must be in the same column as the other land, but there is no name opposite in the list of taxable inhabitants. The only distinction from the general law is that the lands of nonresidents are placed with the other lands, instead of in a separate part of the roll. In Collins v. City of Long Island City, 132 N. Y. 321, 30 N. E. 835, in which city there was a like provision as to the placing of the lands of nonresidents on the roll, the court, in commenting upon the method of complying with this provision, say, at page 325, 132 N. Y., and page 836, 30 N. E.:

"If the land is vacant, and owned by a nonresident of the city, the first column of the roll should state, instead of the name of the owner, such a designation or description of the land as the statute requires."

But the question has been settled by authority in Zink v. McManus, 49 Hun, 583, 3 N. Y. Supp. 487. The plaintiff, who was the owner of the land, was a resident of the city of Buffalo, and the premises were in the actual possession of his tenant. The assessment was to a stranger, and the court held it was void, being in contravention of the provisions of the Revised Statutes referred to. This case was affirmed in the court of appeals (121 N. Y. 259, 24 N. E. 467) upon another ground, the court declining to follow the general term on the point stated because the owner had procured the land to be assessed to the stranger whose name appeared on the roll. It gave no opinion, however, either for or against the view taken by the general term, upon the question involved in this appeal. The counsel for the appellant relies upon Collins v. City of Long Island City, 132 N. Y. 321, 30 N. E. 835. In that case the lands of nonresidents were not

to be separated from other assessments, but the owner's name was inserted among the list of the taxable inhabitants, and this was claimed to vitiate the assessment. The court held the insertion of the name was surplusage, and that the assessment was valid. In the present case, if our interpretation of the statute is correct, it was imperatively necessary that in the first column the name of each taxable inhabitant should appear. The requirement was disregarded, and it has been held to be a jurisdictional defect. In the Collins Case the land was placed in the proper column, and the fact that the owner's name was also in the list did not operate to deceive him, but rather to give him information. The judgment should be affirmed, with costs to the respondent.

Judgment affirmed, with costs to the respondent. All concur, except WILLIAMS, J., who dissents.