In the Matter of the Application of DENNISTOUN WOOD and J. WAL-
TER WOOD, as Executors, etc., of WILLIAM WOOD, Deceased, to
Compel the Cancellation of Taxes on Certain Real Property Situ-
ate in the Borough of Queens, Formerly Long Island City.

THE CITY OF NEW YORK and BIRD S. COLER, as Comptroller of the
City of New York, Appellants; DENNISTOUN WOOD and J. WAL-
TER WOOD, as Executors, etc., of WILLIAM WOOD, Deceased,
Respondents.

*Long Island City — assessments for taxation are not governed as to their form by
the General Tax Law and need not state the quantity of land assessed.*

Assessments for taxation on property in Long Island City are governed by special
laws and not by the provisions of the General Tax Law (Laws of 1896, chap.
908), and although no original authority is shown for the form of assessments
adopted in that city from the date of its organization, yet, in view of the sub-
sequent legislative recognition of the system, particularly of chapter 656 of the
Laws of 1886, which is still in force, and by which a presumption of regularity
is created in favor of previous assessments made in accordance with that cus-
tom, and also of the fact that the charter of Long Island City was, by chapter
548 of the Laws of 1889, modified in its relation to the General Tax Laws of
the State, an assessment made in such accustomed form in 1897 is valid, not-
withstanding its omission to state the quantity of land assessed as provided in
section 21 of article 2 of the General Tax Law.

APPEAL by The City of New York and Bird S. Coler, as comp-
troller of said city, from an order of the Supreme Court, made at the
Queens County Special Term and entered in the office of the clerk
of the county of Kings on the 14th day of October, 1898, directing
the cancellation of certain taxes levied in Long Island City in 1897.

*William J. Carr*, for the appellants.

*George W. Stephens* for the respondents.

WOODWARD, J. :

This proceeding was brought under the provisions of chapter 656
of the Laws of 1886, a local statute applicable to Long Island City
only, which provides that " Where the invalidity or irregularity of
any tax or assessment, or water rates or rents appears upon the face
of the proceedings, any party in interest may apply by petition to

any court of competent jurisdiction for an order canceling the same; said court shall require a reasonable notice to be given to said city of such petition, and shall hear the proofs and allegations of the parties, and shall, in case such irregularity or invalidity is established, order such tax or assessment, water rates or rents to be canceled; and thereupon the same shall be canceled by the said treasurer."

It was alleged on the part of the petitioners that they were the owners and holders of certain mortgages upon the property involved in this proceeding, and that they were parties in interest within the meaning of the statute, and this being denied only upon information and belief, the court held that they were properly in court for the purposes of this proceeding. The grounds on which the petitioners asked to have the taxes canceled were stated to be: "(1) That no valid assessment of said property was made by the board of assessors, in consequence of their failure to state, in the assessment roll, the quantity of the land assessed; (2) that the assessment roll, in which said alleged taxes are contained, was never filed in the office of the said receiver, in pursuance of any action on the part of the common council had or taken after such taxes had been calculated and extended in the office of the said clerk of Long Island City; (3) that said assessment roll was never confirmed by the common council of Long Island City; (4) that the rate of taxation adopted by the board of assessors was neither fixed nor confirmed by the said common council; (5) that no warrant to the said receiver to collect said taxes was authorized by said common council, after the assessment roll had been filed in the office of the city clerk."

The learned court below granted the petition on the first ground stated, and as this is the only one of the alleged irregularities which appears upon the face of the proceedings, or as to which there is evidence sufficient to overcome the presumption which the statute declares shall exist in favor of the regularity of "every tax levied and assessments and all water rates and rents made" (§ 10, chap. 656, Laws of 1886), we shall confine our discussion to this question.

It appears from the evidence that the assessors of Long Island City, instead of stating the quantity of land in the second column of the assessment roll, as provided by section 21 of article 2 of chapter 908,

Laws of 1896 (the Tax Law) adopted a form of their own, following a custom reaching back to the organization of the city, and which began with the name of the owner of the property, followed in the second column by the block number, and in the third by the number of the lot; fourth, valuation; fifth, amount of city tax; sixth, ward tax. There is no direct provision in the charter of Long Island City, as it existed prior to the merger of that municipality into the Greater New York, for making up the assessment roll. In the amendment to the original act of incorporation (Chap. 461, Laws of 1871) it is provided (§ 6, tit. 6), that " In preparing said assessment rolls, and in reviewing the same, the said assessors shall have all the powers and be subject to all the duties of assessors of towns in this State, except as herein otherwise provided, and except that lands of non-residents shall not be separated from the other assessments." This act was amended in 1889 (Chap. 548), and the words, " and be subject to all the duties," were dropped out; so that the provision in force at the time of the assessment complained of read: " In preparing said assessment rolls and in reviewing the same, the said assessors shall have all the powers of assessors of towns in this State, except as herein otherwise provided, and except that lands of non-residents shall not be separated from the other assessments, and that the assessed valuation of all personal property shall be entered by said assessors in separate books or rolls," etc.

It is urged by the petitioners that, under the provisions of this law, it was necessary that the assessors of Long Island City should have followed the form prescribed by the Tax Law, and that in failing to designate the quantity of land assessed, in the second column, the assessment is vitiated, and comes within the provision of the law under which this proceeding is taken. This view of the question is accepted by the learned court at Special Term, and in a written opinion we are told that: " In the case at bar, we find that the assessors have omitted to place in the assessment roll the quantity of land opposite the number of each lot, and there is nothing to be gathered therefrom by way of dimensions or description which may be regarded as a substantial equivalent therefor. This omission by the assessors to follow a positive requirement of the statute, one as essential to constitute a valid assessment as either of the other specifications of duty on their part, renders the assessment invalid

and the tax non-enforcible against either the owner or the real prop-
erty, upon the principles enunciated and applied in the cases above
cited."

We are unable to agree with the court below in this conclusion.
The assessment by blocks and numbers of lots meets all of the
requirements of accuracy of description, which is the essential point;
and it was provided by law, prior to the enactment of the Tax Law
in 1896, that "if such quantity be a full lot, it shall be designated
by the number alone; if it be a part of a lot, the part must be desig-
nated by boundaries, or in some other way, by which it may be
known." (R. S. subd. 5, § 12, art. 2, tit. 2, chap. 13, pt. 1 [9th ed.])
This is in reference to non-resident lands, and follows the provision
that, "In a second column, and opposite to the number of each lot,
they shall set down the quantity of land therein liable to taxation."
(Subd. 3.) We are not to be understood as holding that boards of
assessors, acting under the provisions of the Tax Law, would be
complying with the provisions of that statute in making an assess-
ment after the manner of the assessments of Long Island City; but
we are persuaded that the assessors who made that assessment were
not acting under the authority of the General Tax Law of the State,
but that they were governed by special laws, and that the provision
found in chapter 548 of the Laws of 1889, that, "In preparing
said assessment rolls and in reviewing the same, the said assessors
shall have all the powers of assessors of towns in this State," did
not impose upon them the duty or the necessity of following the
form of assessment provided by the Tax Law. The fact that the
Legislature, in amending the charter of the municipality of Long
Island City, dropped from the act the words, " and be subject to all
the duties," indicates clearly that it was not the intention of the
statute to bring the assessors of this city under all the provisions of
law relative to assessors of towns, but simply that, in " preparing
said assessment rolls and in reviewing the same," they were to have
" all the powers of assessors of towns."

The form of an assessment roll is not a matter of power; it is
one of duty; and when the Legislature refused to use the language
necessary to impose the duty of following the form of assessment
provided in the General Tax Laws of the State, it must be pre-
sumed to have done so for a purpose; and the history of Long

Island City in relation to its taxes, as developed through a series of legislative enactments, furnishes a sufficient reason for this change of language, and establishes the fact that the assessments made in 1896 were made in compliance with law.

There are no presumptions in favor of the petitioners; it cannot be assumed that the Legislature has ever intended to permit any individual to escape the payment of taxes justly due the State, and while it is true, as said by the court in the case of *Sanders* v. *Downs* (141 N. Y. 422), that "Any construction of the statute which would in any degree encourage erroneous, lax or careless methods of making up the assessment roll, would disturb the security with which the law guards private rights, and at the same time prove detrimental to public interests," there is no reason why this court should give a strained construction to the law in order to defeat an orderly and just assessment; and it being apparent that the assessors were not required to conform to the particular form of assessment provided in the Tax Law by reason of the provisions of section 6, chapter 548 of the Laws of 1889, it is important to inquire by what authority the assessors of Long Island City did act in making their assessment, in order that we may determine as to its validity and regularity.

Long Island City was incorporated in 1870. Under the provisions of chapter 719 of that year, under which the city was created, the revenues necessary to carry on the business of the municipality were to be assessed upon the real and personal estate within the city as determined by the assessment roll of the town within which the city was located. In the year following the charter was amended (Chap. 461), and in this statute provision was made for a board of assessors, who, in preparing and reviewing the assessment rolls were to "have all the powers and be subject to all the duties of assessors of towns in this State, except as herein otherwise provided, and except that lands of non-residents shall not be separated from the other assessments." This law, containing features entirely different from the provisions of the general statutes, was further amended in 1889 as indicated above. In the amended act of 1871, there was a provision that: "It shall be the duty of the common council at as early a day as practicable, to cause a survey to be made of all the real estate within the bounds of the city limits, and maps made thereof,

with the proper subdivisions of wards, districts, blocks, lots and streets, defining thereon the number of each ward, district, block and lot, as well as the owner's name of each lot thereon," which was a substantial re-enactment of the provision contained in the original act of incorporation. It is not disputed that such maps were made, and it is conceded that the field maps from which the assessments were made conform to the official map of the city, and that the dimensions of each of the lots involved in this controversy are shown upon the field maps, which have been in use for many years, and which may be presumed to have been made under the authority of the law as given above. The fact that the general city map does not show the subdivisions into blocks and lots as provided in the original act, indicates that the field maps, conforming to the general map, were made to carry out the provision that these maps should give the "proper subdivisions of wards, districts, blocks, lots and streets, defining thereon the number of each ward, district, block and lot."

It is evident that the assessors, from a very early day in the history of Long Island City, used these maps for the purpose of designating and describing the property of the city subject to taxation, for, in 1876, we find the Legislature of this State enacting a law (Chap. 422) " relating to unpaid taxes in Long Island City." The first section of this statute provides that : " The assessment rolls of Long Island City, for the years eighteen hundred and seventy, eighteen hundred and seventy-one, eighteen hundred and seventy-two, eighteen hundred and seventy-three, eighteen hundred and seventy-four and eighteen hundred and seventy-five may be corrected, and the several items of unpaid taxes for either State, county, city or ward purposes, for each and every of the years aforesaid, may be re-extended as hereinafter provided," etc. Section 2 provides that : " The board of assessors of said city are hereby authorized and empowered to correct the assessment roll of each and every of the years aforesaid, and for that purpose any piece of land situate within said city not exempt by law from taxation, and which shall have been described or assessed, or attempted or intended so to be upon said assessment rolls or either of them, and upon which the State and county, or the city or ward taxes for any of the years aforesaid, with the interest, percentages and penalties prescribed by law, shall

not have been fully paid, so far as the same can be ascertained by said assessors, may be redescribed by reference to and use of the assessment maps of said city, or in such other way as shall make a valid and effectual description for all the necessary purposes of location, identification, sale and conveyance thereof, in case the same should be thereafter sold for non-payment of any of the taxes of that year, and the name of the owner, the description of the property and the extension of the tax may each be amended, re-amended and corrected at any time prior to the execution and delivery of the lease hereinafter provided, if any error shall be found therein, and no error in the owner's name or in the description or valuation of the property, or in the extension of the tax, shall impair or in any way affect the regularity or validity of the assessment or tax or the lien thereof, or any step or proceeding for the enforcement or collection of the tax, and in any case where the owner of any real estate or some party interested therein shall not furnish said assessors with an accurate description of such realty by reference to and use of such assessment maps, together with the name of the owner thereof, the words 'owner unknown' may be used with the same force, effect and validity in all respects and for all purposes as though the name of the real owner or owners had been known to and used by said assessors."

Section 3, as though to emphasize the legislative recognition of these assessment maps, provides further that : " Any piece of land within said city not exempt by law from taxation, which shall have been described or assessed, or attempted or intended so to be on the assessment roll of any of said years, and upon which any tax, interest, percentage or penalty shall appear to be unpaid, may be redescribed as aforesaid in one or more lots, blocks or plots, as laid down on said assessment maps, and as said assessors may find most convenient."

In 1886 the Legislature was again called upon to aid in the affairs of Long Island City, and it is under section 10 of this act (Chap. 656) that the petitioners seek to be relieved of their taxes. This act is entitled : " An act in relation to unpaid taxes, assessments, water rates and rents in Long Island City, and to collect the same, and to insure a more efficient collection of the same in the future."

This act provides that: " All acts and parts of acts inconsistent with the provisions of this act are hereby repealed in so far as they are inconsistent herewith," which saves all of that part of chapter 422 of the Laws of 1876, which are not inconsistent with this act. By the provisions of the act of 1886, the treasurer is authorized to sell real estate on which taxes are in arrears, and he is directed to publish in pamphlet form a list of the parcels of real estate to be sold " substantially as the same are described in the assessment rolls in which said tax, assessments, water rates and rents are imposed thereon ; " and it is provided that " It shall not be necessary in said list nor in any notice required to be given or published by this act, to state the name of the owner of the premises affected, nor to describe the premises affected otherwise than by the said block and lot numbers on said assessment rolls, or on the official city map." In section 9 of the act it is further provided that: " The premises conveyed need not be described other than by said lot and block number, and the dimensions of any lot shall be deemed to be those of said lot as laid out upon the official city map, and when so executed shall be presumptive evidence that the proceedings under this act were regular, and also presumptive evidence that all previous proceedings in levying the taxes, assessments, water rates and rents mentioned therein, were regular and according to law."

It is difficult, in the presence of these two statutes, designed to " promote substantial justice in the matter of enforcing the lien and collection of said unpaid taxes, so that no part of the property within said city shall escape or be exempted from paying its fair share of the expenses thereof, but that the whole of said expenses shall be borne equitably by all " (§ 23, chap. 422, Laws of 1876), both of which recognize the validity of assessments in the manner and form involved in the present matter, to agree with the conclusion of the court below. The very act under which the petitioners ask for relief (Chap. 656, Laws of 1886) asserts the validity of this form of assessment for the purpose of divesting the owner of his property, and when title is given, under the description of block and number, it is to be accepted as " presumptive evidence that the proceedings under this act were regular." This being true, is this presumption overcome by the fact that the General Tax Law, which neither repeals the act of 1886 nor the charter of Long Island City, demands

that the quantity of land shall be stated?. If the law of 1886 is repealed, then the proceeding of the petitioners has no basis in law; if it is still in force, then there is no irregularity or invalidity on the face of the proceedings, for the law recognizes the validity and regularity of the assessment rolls as made up in Long Island City for a long series of years, and section 15 of chapter 656 of the Laws of 1886 expressly ratifies and confirms the assessments made prior to the year 1883, and which were concededly made in accordance with the custom prevailing at the time of the assessments in dispute. It is true, of course, that no original authority is shown for this form of assessments; but the subsequent legislative recognition of the system, coupled with the provisions of law ratifying and confirming previous assessments, with no provisions directing any change, and with the early charter modified in its relation to the General Tax Laws, make it impossible to reach any other conclusion than that the acts of the assessors of Long Island City were valid and regular and that the order appealed from should be reversed.

All concurred.

Order reversed, with ten dollars costs and disbursements, and application denied, with ten dollars costs.