surety became thereby fixed. McCombs v. Allen, 82 N. Y. 114. In the case at bar this court, following Holyoke v. Adams, supra, recently held that this defendant should not be permitted to amend its answer by setting up its discharge in bankruptcy which would prevent plaintiff obtaining judgment upon which the disability of the surety might be enforced. 124 App. Div. ——, 109 N. Y. Supp. 1151 (April 24, 1908). It would seem to follow that the defendant was not entitled to have the warrant of attachment vacated. We are not concerned with the question as to the remedy of the surety over against the estate in bankruptcy or against the bankrupt personally in the event that it shall be obliged to pay any judgment that may be recovered herein (see Hill v. Harding, supra, and Klipstein & Co. v. Allen-Miles Co., supra), and no opinion is expressed on those points.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion to vacate the attachment denied, with $10 costs. All concur.

(125 App. Div. 157.)

## CLINTON v. KRULL.

(Supreme Court, Appellate Division, Fourth Department. March 4, 1908.)

1. TAXATION—TAX DEEDS—EFFECT AS EVIDENCE.

Under Tax Law, Laws 1896, p. 850, c. 908, § 157, declaring that the provisions as to sales by the State Comptroller for unpaid taxes and redemption shall govern and control the county treasurer, and that the same rights and remedies shall be deemed to exist, the presumption authorized by section 131 (page 841), providing that a Comptroller's deed shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment, and all notices required to be given previous to the expiration of the time allowed for redemption, were regular and in accordance with law, is applicable to a tax deed executed and delivered by a county treasurer pursuant to section 153 (page 849). and a deed of a county treasurer carries with it the same right to assume that all proceedings prior thereto were regular. °

2. SAME—ASSESSMENT—METHOD—STATUTORY PROVISIONS.

The charter of the city of Niagara Falls (Laws 1892, p. 250, c. 143, § 68), providing the method of assessment of real property of a nonresident of the tax district, and not Tax Law, Laws 1896, p. 807, c. 908, § 29. relative to the same subject, controls as to the assessment of such real property in the city of Niagara Falls; the rule being that a special statute providing for a particular case or applicable to a particular locality is not repealed by a statute general in its terms and applicable, unless the intention to repeal or alter the special law is manifest.

3. SAME—ASSESSMENT NOTICE—DESCRIPTION.

The charter of the city of Niagara Falls (Laws 1892, p. 250, c. 143. § 68), providing that the board of assessors shall assess each lot separately, giving the name of the owner, if known, and, if not, the name of the occupant if occupied, the part of the lot assessed, the number thereto, the street, side of street, and number of feet fronting on street, or such other brief description as will enable the land intended to be known and located, is sufficient to allow property assessed to be located with reasonable certainty and to give notice to the owner of the part intended to be assessed, and, where assessors treated property as a subdivision tract and described each lot separately, in direct accordance with the charter, and in addition gave the course and number of feet of each lot from intersecting streets, and designated the lots by exactly the same letters and numbers as they were designated on a subdivision map filed by the owner's grantor, and the lots were staked out and could be located with little

difficulty, such assessment was sufficient to give notice to the owner of the part or portion intended to be assessed.

4. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—NOTICE.

Laws 1892, p. 250, c. 143, § 68, providing that the board of assessors of a city shall assess each lot separately, giving the name of the owner if known, and, if not, the name of the occupant, with a description of the property, is not unconstitutional, as depriving the owner of his property without due process of law.

5. TAXATION—TAX SALE—NOTICE TO REDEEM.

Under Tax Law, Laws 1896, p. 842, c. 908, § 134, providing that if the land sold for taxes shall, at the expiration of the year given for the redemption thereof, be in the actual occupancy of any person, the grantee shall give notice to redeem, no notice was necessary where the land sold was unoccupied.

Appeal from Judgment on Report of Referee.

Action by George Clinton against Fred H. Krull. Judgment for defendant, and plaintiff appeals. Affirmed on the opinion of the referee.

The following is the opinion of the referee:

The plaintiff brings this action under the provisions of article 5, tit. 1, c. 14, Code Civ. Proc., to compel the determination of the defendant's claim to certain real property situate in the city of Niagara Falls, Niagara county, N. Y. The complaint alleges that the plaintiff has been in possession of the real property in question as the sole owner in fee thereof since the 5th day of December, 1898, on which day one Martin Clark and Cora Lee Clark, his wife, made, executed, and delivered to this plaintiff a deed of said premises, which deed was recorded in the office of the clerk of Niagara county on the 1st of May, 1899, in Liber 235 of Deeds, at page 170, and further alleges that the defendant herein unjustly claims an interest or estate in said premises adverse to that of the plaintiff herein, to wit, the adverse claim that he is seised of said premises in fee by virtue of a pretended deed or conveyance executed and delivered to him on or about the 21st day of May, 1904, by the county treasurer of Niagara county. The defendant herein does not deny in his answer the plaintiff's claim, but sets up by way of defense that said real property was duly assessed for taxation in the year 1900, when it was owned by and in the possession of the plaintiff, and that state and county taxes for said year were thereafter duly levied against it and returned unpaid to the county treasurer of Niagara county, and such regular proceedings thereafter were had and taken that the said real property described in the complaint was sold for such unpaid taxes according to the provisions of the general tax law of the state of New York, and the defendant herein became the purchaser at such sale, and thereafter, and on the 21st day of May, 1904, received from the county treasurer of Niagara county a deed or conveyance of the lands in question. It is to be determined, therefore, upon the issues joined in this action, whether or not the deed from the county treasurer to the defendant herein, issued pursuant to the provisions of the general tax law of the state of New York, being chapter 908, p. 795, Laws 1896, and the acts amendatory thereof and supplemental thereto, conveyed to the defendant herein an absolute estate in fee, subject only to any claims the county or state might have thereon for taxes, liens, or incumbrance, and thereby divested the plaintiff herein of his prior title to the premises.

In order that said deed should have any legal effect in conveying the right or title to said premises, it will be conceded, I think, that it should conform to the provisions of said tax law relative to the assessment, levy, and enforcement of payment of taxes against said property, except as the same may be modified by the provisions of the charter of the city of Niagara Falls. Upon the trial the defendant assumed the affirmative and showed that the treasurer of Niagara county on the 18th day of November, 1902, sold at public auction and in parcels the lands described in the complaint to the defendant

herein under proceedings specified by the tax law, subsequent to a regular assessment of said premises by the assessors of the city of Niagara Falls, in the year 1900. Subsequent to such sale the deed from the county treasurer to the defendant herein was executed and delivered, and this deed was offered and received in evidence. No proof was given of any of the proceedings provided by the tax law prior to the sale referred to and the execution and delivery of the deed; the defendant relying upon the presumption that the deed itself was presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the lands sold, and that all notices required by law to be given previous to the expiration of the time allowed by the law for the redemption thereof, were regular and in accordance with all of the provisions of the tax law relating thereto, which presumption is authorized by section 131 of the law referred to. This section applies to sales by the Comptroller of the state, and it is claimed by the defendant that the presumption in favor of the deed in this case which was executed and delivered pursuant to the provisions of section 153 of the same law is authorized by the provisions of section 157, which provides "that the provisions of article 6 of this act entitled sales by Comptroller for unpaid taxes and redemption of lands," shall, in so far as it is not otherwise provided, govern, and control the action of the county treasurer, who shall perform the duties otherwise devolved upon the Comptroller, and the same rights and remedies shall be deemed to exist under the provisions of this article as are provided for in article 6.

The first question to be determined, therefore, is whether or not the contention of the defendant in this respect is correct, because, if the presumption provided by section 131 do not apply to tax deeds executed and delivered by the county treasurer, then there is no evidence in this case that the several acts required by the tax law have been performed which would authorize the execution and delivery of the deed in question. On this point the plaintiff claims that section 157 does not refer to any presumption specified by section 131 upon the ground that said presumption is only a rule of evidence, and that section 157 provides that "the only rights and remedies" deemed to exist under the provisions of section 131 shall be applicable to purchasers at a sale by a county treasurer, and that the presumption provided in section 131 is neither a right or a remedy. I do not find that the courts have been called upon to decide this point in any previous case; and, while it will be conceded that the presumptions relied upon are not in any sense a remedy, I am not prepared to agree with the contention of counsel that it is not a right, or that it is nothing more than a rule of evidence. The only cases in which I find that the question has been raised are those of Bennett v. Kovarick, 23 Misc. Rep. 73, 51 N. Y. Supp. 752, and Welstead v. Jennings, 104 App. Div. 179, 93 N. Y. Supp. 339. In these cases it seems to have been assumed by the court that it was the intention of the Legislature that the rights mentioned in section 157 should include the presumptions provided for in section 131, and that, therefore, a deed of a county treasurer carried with it to a purchaser the same rights to assume that all proceedings prior thereto were regular as would be presumed in favor of a purchaser under a deed from the Comptroller, and, after a careful review of the tax law in question, I am of the opinion that the presumptions relied upon by the defendant in this action should be allowed.

Having disposed of this question, we pass to the question as to whether or not the original assessment of the property described in the complaint was legally made, and was in conformance with the general or special laws applicable thereto. We are first called upon to decide as to whether or not the assessors of the city of Niagara Falls were bound to follow the method of assessment as provided by the general tax law, or whether they were bound to follow the method of assessment as prescribed by the charter of the city of Niagara Falls, both of which laws were in effect at the time the assessment was made. I am of the opinion that, in making the assessment referred to, the assessors were bound to conform with the provisions of the charter of the city of Niagara Falls applicable thereto at the time it was made. The charter of this city, which is known as chapter 143, p. 226, Laws 1892, was in force at the time of the making of these assessments, and provided, in section 68 thereof, that "the city assessors shall constitute the board of assess-

ors," and, except as therein otherwise provided, they should "perform all the duties and possess all the powers conferred by the law upon the assessors of the different towns of the state in and for said city, and subject to all the obligations and perform the duties specified in this act in reference to the assessment of property within said city for the purpose of levying the taxes imposed or which may be imposed by the common council as well as by the supervisors of the county of Niagara. * * * They shall make a general assessment roll for each ward to be jointly used therein. * * * They shall assess each lot or parcel of land separately, giving the name of the owner, if known, or if not, the name of the occupant if occupied, the part of the lot assessed, the number thereof, the street, side of street and number of feet fronting on street, or such other brief description as will enable the land intended, to be known and located." The provisions of the general tax law (section 29) applicable to the assessment of this property are as follows: "The real property of nonresidents of the tax district shall be designated in a separate part of the assessment roll, and if it be a tract subdivided into lots, or parts of a tract so subdivided, the assessors shall: First. Designate it by its name, if known by one, or if not distinguished by a name, or the name is unknown, state by what lands it is bounded. Second. Place in the first column the numbers of all unoccupied lots of any subdivision tract without the names of the owners, beginning at the lowest number and proceeding in a numerical order to the highest, but the entry of the name of the owner shall not affect the validity of the assessment. Third. In the second column and opposite the number of each lot, the quantity of land therein. Fourth. In the third column and opposite the quantity, the full value. Fifth. If it be a part of a lot, the part must be distinguished by boundaries, or in some other way by which it may be identified. If any such real property be a tract not subdivided or whose subdivisions cannot be ascertained by the assessors, they shall certify in the roll that such tract is not subdivided or that they cannot obtain correct information of the subdivision and shall set down in the proper column the quantity and valuation as herein directed. If the quantity to be assessed is part only of a tract, that part or the part not liable must be particularly described." A comparison of the provisions of these two methods of assessment will show, at a glance, that an assessment made in strict conformity to one would not be valid under the provisions of the order. It is therefore necessary at the outset to determine, as stated before, which of these two laws apply.

After a perusal of the authorities, I am of the opinion that the assessors were bound by the provisions of the charter of the city of Niagara Falls in force at the time the assessment was made. This charter was a special act, becoming a law on the 17th day of March, 1892. The provisions of the tax law applicable to the assessment in this case became operative on the 27th day of May, 1896. The general law did not specifically repeal the provisions of the charter referred to, and I take it to be a well-settled rule of construction that a special statute providing for a particular case or applicable to a particular locality is not repealed by a statute general in its terms and applicable, unless the intention of the Legislature to repeal or alter the special law is manifest, although the terms of the general act would, taken strictly, and but for the special law, include the case provided for by it. In re Wood, 35 App. Div. 363, 54 N. Y. Supp. 978; Collins v. Long Island City et al., 132 N. Y. 321, 30 N. E. 835; Cottle v. Cary, 61 App. Div. 66, 70 N. Y. Supp. 129; Id., 73 App. Div. 54, 76 N. Y. Supp. 580; Buffalo Cemetery Association v. City of Buffalo, 118 N. Y. 61, 22 N. E. 962; Bennett v. Kovarick, 23 Misc. Rep. 73, 51 N. Y. Supp. 752; Welstead v. Jennings, 104 App. Div. 179, 93 N. Y. Supp. 339.

Having, therefore, determined that the assessment should be made according to the provisions of the special act of the Legislature known as the charter of the city of Niagara Falls, and it appearing conclusively from the evidence that all the provisions relative to the assessment of nonresident lands as provided by said charter were complied with, we come to the question, which it seems to me is the real point at issue in this case, as to whether or not the provisions of the charter of the city of Niagara Falls applicable to the assessment of lands of nonresident owners are unconstitutional and void as claimed by the plaintiff herein, by reason of the fact that they do not with reasonable

definiteness allow the lands assessed to be located. In making his claim the plaintiff relies particularly upon two decisions of the Court of Appeals of this state, to wit: Matter of New York Central, 90 N. Y. 342; Zink v. McManus, 121 N. Y. 259, 24 N. E. 467. In both of these cases the assessment was made under the provisions of the general tax law, and in both cases the assessment was against a part of a lot, and the law under which the assessment in both of these cases was made specifically provided that, if a part of a lot is to be assessed, the part must be distinguished by boundaries or in some other way by which it may be identified. In the first case referred to we find that the assessment was made against "part of outer lot No. 93, bounded and described as follows: Beginning in the southerly line of Exchange street at the point of intersection thereof with the easterly line of a lot of land formerly owned by Louis Lee Couteuelx, now deceased, and which point is supposed to be five hundred nine and eight-twelfths feet distant easterly at right angles from the easterly line of Washington street; thence south seventy-six degrees east along the southerly line of Exchange street, sixty-five feet; thence southerly 76 degrees and 30 minutes east one hundred fifty-nine feet to the Little Buffalo creek; thence down the said creek southwesterly thirty-two feet; thence north fifteen degrees and forty-five minutes west, one hundred ninety-four feet to the place of beginning, containing more or less." It is apparent that it would be impossible from the assessment as made in that case to designate the part of the property intended, and especially owing to the fact that its northerly boundary was not at any time definitely situated, but followed the course of a creek. The court in the opinion says that "it was the duty of the assessors to designate or describe the land by boundaries or in some other way by which it may be known." This is the provision of the tax law hereinbefore referred to. Testimony of surveyors was also introduced in that case, by which it was definitely determined that the description for taxation was insufficient to enable any one to locate the land. The court in the same case states "that the assessment is intended to be notice to the owner of the burden cast upon his lands." In the case of Zink v. McManus the assessment was against a part of a farm, and, being made under the general tax law, it became necessary for the assessors in describing a part of a lot to distinguish it by boundaries. The court in its opinion states "that a reasonable accurate designation or description of the land assessed and sold is necessary in order to give validity and effect to the conveyance." In that assessment the feet frontage and the northerly boundary line alone were given, and under such conditions the criticism of the court was properly made. In both of the cases referred to the court simply implies the rule that such a description should be used in making the ordinary assessment as would enable the land to be located, and in both of the cases referred to the assessors did not conform to the tax law relative to the method of assessing parts of lots.

In the case at bar I find that in making the assessment of the lands in question the assessors have treated it as a subdivision tract, and that they have described each lot separately in direct accordance with the provisions of the charter of the city of Niagara Falls applicable to such assessments, and, in addition thereto, have given the course and number of feet of each lot from intersecting streets. I also find that in the month of August, 1894, six years before the assessment in question was made, that the plaintiff's grantor, with others, caused to be filed in Niagara county clerk's office a map or subdivision of the property assessed, and that the designation of the property by lots upon the assessment roll corresponds with the subdivision of the property into lots as laid down upon the map filed. That the map in question was drawn to a scale, and the lots laid down thereon can be definitely located, and their dimensions thereon given. I also find that in the year 1898, two years before the assessment in question was made, that the charter of the city of Niagara Falls was amended so as to provide for the establishment of an assessors' office, and the appointment of an assessors' clerk, and for the preparation and filing in said office of assessors' maps representing the subdivisions of property within the city of Niagara Falls, together with the names of the owners. In complying with the provisions of this amendment, and in order to prepare the necessary maps referred to, among other records to which the assessors of the city of Niagara Falls have access, were those of the Niagara

county clerk's office, and it is fair to assume that, in the preparation of their records, they consulted in regard to the property in question the map which had been filed some four years previous. In re Wood, 35 App. Div. 363, 54 N. Y. Supp. 978. At any rate, we find that an assessment which was made in the year 1900 designates the lots by exactly the same letters and numbers as they are designated upon the subdivision map as filed, and certainly it cannot be said that under such conditions the plaintiff in this action was not definitely apprised of that portion of his property against which said assessment was levied. It also appears that said lots were staked out and marked by use of ordinary wooden stakes such as surveyors use, and that they could be located with little difficulty by any person and with reasonable certainty. Owing to the fact that the distance and course from intersecting streets was given in the original assessment and having thus been located, the dimensions are readily ascertainable from the public records of the Niagara county clerk's office, and it would seem, under such conditions, that the requisites as to location and quantity of land contained in each lot or parcel were sufficiently complied with. The additional statement of the course and distance from intersecting streets is provided by the latter portion of the provisions of the charter, which, after prescribing a definite method of assessment, also provides, "Or such other brief description as will enable the land intended to be known and located." The deed from the county treasurer to the defendant herein specifically refers to the map filed by the plaintiff's grantor, and therefore the conveyance itself is definite and conclusive as to the property intended to be conveyed. The evidence showed that this was the same land referred to in the plaintiff's complaint, and therefore the title to the plaintiff in the premises was divested by the county treasurer's deed. The evidence in the case showed that the defendant himself, who is not a surveyor or one accustomed to perform the duties of such, could locate the lots in question from the street lines and stakes which have been referred to and the dimensions stated in the original assessment roll. The plaintiff offered no evidence whatever except copies of the assessment rolls. The presumptions, if any, should be in favor of sustaining the assessment as made, as the law contemplates that all property shall bear its just proportion of taxes assessed for public purposes.

I am therefore of the opinion that the provisions of the charter of the city of Niagara Falls applicable to the assessment of the property in question are sufficient to allow the property so assessed to be located with reasonable certainty, and to give sufficient notice to the owner or owners of said property of the part or portion intended to be assessed, and that the assessment, as made in this case, was fully sufficient for such purposes, and therefore is not unconstitutional, in that it deprives the owner of his property without due process of law. The lands in question being unoccupied, no notice was necessary to be given under the provisions of section 134 of the tax law. The conveyance, therefore, by the county treasurer of the property in question to the defendant herein created in him an absolute estate in fee thereof, subject to all claims the county or state might have thereon for taxes or assessments or incumbrance, and that, therefore, the defendant is entitled to immediate possession of said premises, and that judgment should be entered herein barring the plaintiff and all claiming under him from any right or title in said premises.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and KRUSE, JJ.

George Clinton, Jr., for appellant.
Tice & Vicary, for respondent.

PER CURIAM. Judgment and order affirmed, with costs, upon the opinion of Tuttle, referee.